1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   EDWARD MILLER, TARA KANE | No.  2:13-cv-00581-MCE-KJN |
| 12                    Plaintiffs, | |
| 13           v. | **MEMORANDUM AND ORDER** |
| 14   SAFECO INSURANCE COMPANY OF AMERICA; FIRST NATIONAL INSURANCE COMPANY OF AMERICA; Does 1 through 20, inclusive, | |
| 15 | |
| 16 | |
| 17                    Defendants. | |

18

19          Plaintiffs Edward Miller and Tara Kane (collectively "Plaintiffs") initially filed suit

20   against Safeco Insurance Company of America ("Safeco") and First National Insurance

21   Company of America ("First National" and collectively "Defendants") in the Superior

22   Court of California for the County of Sacramento alleging two causes of action: (1)

23   breach of the implied covenant of good faith and fair dealing; and (2) breach of written

24   contract.  On March 25, 2013, Defendants removed the action to federal court based on

25   diversity jurisdiction.  Presently before the Court is Defendants' Motion for Summary

26   Judgment ("Motion").  Defendants' Notice of Motion states that Defendants move for "an

27   order granting summary judgment on [P]laintiffs' causes of action for breach of contract

28   and breach of the implied covenant of good faith and fair dealing."  (ECF No. 12 at 1.)

                                            1

1    However, Defendants' Reply Memorandum of Points and Authorities appears to

2    alternatively seek partial summary judgment by stating, "[e]ven if the Court does not

3    grant summary judgment on [P]laintiffs' breach of contract claim, it should grant

4    summary judgment on the bad faith claim." (ECF No. 15-1 at 8.) For the reasons stated

5    below, Defendants' Motion is denied as to both causes of action.[1]

6

7                                        **BACKGROUND**

8

9          Since May 2010, Plaintiffs have rented a home in Orangevale, California.

10   Plaintiffs insured their personal property at their rented residence in Orangevale,

11   California under a renter's insurance policy with Defendants. In addition to the renter's

12   insurance policy, Plaintiff Miller also held a homeowners policy on property in Vacaville,

13   California. (Decl. Edward Miller, Exhibit A, ECF No. 13-3 at 6.) The policy number for

14   the renter's policy is "OM2385243," while the policy number for the Homeowners policy

15   was "OM2394918." See (Decl. Edward Miller, ECF No. 13-3 at 3.); (Ex. A, ECF No. 13-3

16   at 6.); (Notice of Nonrenewal, Ex. A to Complaint, ECF No. 12-3 at 12.)

17         On February 9, 2012, Defendants sent Plaintiffs a Notice of Nonrenewal

18   explaining that Defendants "will not be able to renew [Plaintiffs'] Homeowners insurance

19   policy." (Notice of Nonrenewal, Ex. A to Complaint, ECF No. 12-3 at 12.) Although the

20   Notice of Nonrenewal referred to a "Homeowners Policy," the policy number listed in the

21   Notice in fact belonged to Plaintiffs' renter's policy for their residence in Orangevale.

22   Plaintiffs read the Notice of Nonrenewal; however, they "both concluded that [the] notice

23   did not relate to, and had no bearing upon, their renters insurance policy with

24   Defendants." (Opposition, ECF No. 13 at 3.) Rather, Plaintiffs believed that the Notice

25   of Nonrenewal referred to the homeowners insurance policy for the property in Vacaville.

26   (Id.)

27   _____

28         [1] Because oral argument will not be of material assistance, the Court orders this matter submitted
     on the briefs. E.D. Cal. Local Rule 230(g).

1    Indeed, the Notice of Nonrenewal refers to a "Homeowners" policy twice in the Notice.

2    (ECF No. 12-3 at 12.)  Accordingly, Plaintiff Miller believed "that he needed to take no

3    further action upon receiving [the] notice" because he "already sold the Vacaville,

4    California residence by the time he received the Feb. 9, 2012" Notice of Nonrenewal.

5    (ECF No. 13 at 3.)

6         On June 26, 2012, a burglary of Plaintiffs' rented residence in Orangevale,

7    California resulted in the loss of "tens of thousands of dollars worth of personal

8    possessions: everything from high-end electronics to family heirlooms and keepsakes."

9    (Complaint, ECF No. 12-3 at 8.)  After reporting the loss, Defendants informed Plaintiffs

10   that the loss is not covered because the "policy was not renewed."  (Decl. Robert J.

11   Scott, Jr., Ex. 2, ECF No. 12-3 at 14.)  Plaintiffs claim that at all relevant times, they

12   "believed that their policy of renter's insurance with Defendants was in full force and

13   effect."  (Complaint, ECF No. 12-3 at 7.)

14

15                                      **STANDARD**

16

17        The Federal Rules of Civil Procedure provide for summary judgment when "the

18   movant shows that there is no genuine dispute as to any material fact and the movant is

19   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

20   Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

21   dispose of factually unsupported claims or defenses.  Celotex Corp., 477 U.S. at 325.

22        Rule 56 also allows a court to grant summary judgment on part of a claim or

23   defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

24   move for summary judgment, identifying each claim or defense—or the part of each

25   claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

26   Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).

27   ///

28   ///

                                            3

1   The standard that applies to a motion for partial summary judgment is the same as that

2   which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of

3   Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th

4   Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

5          In a summary judgment motion, the moving party always bears the initial

6   responsibility of informing the court of the basis for the motion and identifying the

7   portions in the record "which it believes demonstrate the absence of a genuine issue of

8   material fact."  Celotex Corp., 477 U.S. at 323.  If the moving party meets its initial

9   responsibility, the burden then shifts to the opposing party to establish that a genuine

10  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

11  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

12  253, 288-89 (1968).

13         In attempting to establish the existence or non-existence of a genuine factual

14  dispute, the party must support its assertion by "citing to particular parts of materials in

15  the record, including depositions, documents, electronically stored information, affidavits

16  or declarations . . . or other materials; or showing that the materials cited do not establish

17  the absence or presence of a genuine dispute, or that an adverse party cannot produce

18  admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The opposing party

19  must demonstrate that the fact in contention is material, i.e., a fact that might affect the

20  outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S.

21  242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper

22  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate

23  that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a

24  reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at

25  248.

26  ///

27  ///

28  ///

4

1   In other words, the judge needs to answer the preliminary question before the evidence

2   is left to the jury of "not whether there is literally no evidence, but whether there is any

3   upon which a jury could properly proceed to find a verdict for the party producing it, upon

4   whom the onus of proof is imposed." Id. at 251 (quoting Improvement Co. v. Munson, 81

5   U.S. 442, 448 (1871)) (emphasis in original).  As the Supreme Court explained, "[w]hen

6   the moving party has carried its burden under Rule [56(a)], its opponent must do more

7   than simply show that there is some metaphysical doubt as to the material facts."

8   Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not

9   lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

10  trial.'" Id. at 587.

11        In resolving a summary judgment motion, the evidence of the opposing party is to

12  be believed, and all reasonable inferences that may be drawn from the facts placed

13  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

14  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

15  obligation to produce a factual predicate from which the inference may be drawn.

16  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

17  810 F.2d 898 (9th Cir. 1987).

18

19                                    **ANALYSIS**

20

21        **A.    Notice of Nonrenewal**

22

23        California Insurance Code section 678 requires that "[a]t least 45 days prior to

24  policy expiration, an insurer shall deliver to the named insured or mail to the named

25  insured . . . a notice of nonrenewal of the policy."  Cal. Ins. Code § 678(a)(2) (West

26  2013).  Section 678 "requires that the insurer's notice . . . be provided in a 'plain, clear

27  and conspicuous writing.'" Everett v. State Farm Gen. Ins. Co., 162 Cal. App. 4th 649,

28  663 (2008) (citing Fields v. Blue Shield of Cal., 163 Cal. App. 3d 570, 583(1985)).

1    In the instant action, Plaintiffs contend that when they "saw that the Feb. 9, 2012

2    notice of nonrenewal referred to their 'Homeowners policy' not once but in two (2) places

3    . . . both [Plaintiffs] concluded that the notice did not relate to, and had no bearing upon,

4    their renters insurance policy with Defendants."  (Opposition, ECF No. 13 at 3.)  Indeed,

5    a renewal letter Defendants sent to Plaintiffs on January 30, 2011 specifically referenced

6    Plaintiffs' "Renters policy."  (Decl. Tara Kane, Ex. A, ECF No. 13-4 at 7.)

7    Therefore, Plaintiffs "believed that the February 9, 2012 notice of nonrenewal referred to

8    a policy of homeowners insurance with Safeco for a home they once owned in Vacaville,

9    California."  (Id.)  Plaintiff Miller maintains that "because he had already sold the

10   Vacaville, California residence by the time he received the Feb. 9, 2012 notice of

11   nonrenewal of his 'Homeowner's policy,' [ he believed] that he needed to take no further

12   action upon receiving" the Notice of Nonrenewal.  (ECF No. 13 at 3.)

13   Defendants, on the other hand, contend that the Notice of Nonrenewal "complie[s]

14   with the statutory requirements" set forth in section 678.  (Mem. P. & A. Supp. Mot.

15   Summ. J. at 10, ECF No. 12-1.)  Defendants assert that "the reference to 'Homeowners

16   Policy' in the Notice" does not render the Notice of Nonrenewal ineffective.[2]  (Reply, ECF

17   No. 15-1 at 5.)  Plaintiffs' counter argument is that "[t]here is no provision in Section 678

18   or elsewhere that allows a carrier to mislabel a notice of nonrenewal (i.e., call an auto

19   policy a homeowners policy, or call a renters policy a homeowners policy) and then rely

20   upon that mislabeled notice in order to deny an insured's claims."  (ECF No. 13 at 7.).

21   The issue of whether the Notice of Nonrenewal provided clear and conspicuous

22   notice to Plaintiffs that their "Renters policy" will not be renewed presents a material fact

23   in dispute.

24   ///

25   [2] Defendants cite a Ninth Circuit case that found an insurer's letter terminating a trust's insurance

26   policy provided adequate notice even though the notice was addressed to the wrong trust.  Solomon v. North Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1136 (9th Cir. 1998).  However, the Court finds Solomon

27   distinguishable from the instant action because it was "undisputed" in Solomon that the trust "correctly understood the notice."  Id. at 1134.  In the instant action, the parties dispute whether or not Plaintiffs

28   correctly understood the Notice of Nonrenewal because the Notice referred to a "Homeowners Policy" rather than a "Renters Policy."

6

1   Indeed, "the actions of [D]efendants in sending" a previous letter that specifically

2   referenced Plaintiffs' renters policy "may have confused [Plaintiffs] as to the status of

3   [their] policy." Lee v. Indus. Indem. Co., 177 Cal. App. 3d 921, 925 (1986).  In other

4   words, "it cannot be said as a matter of law that the [Notice of Nonrenewal] provided

5   [clear and] conspicuous notice" to Plaintiffs.  Trujillo v. Nationwide Ins. Co. of Am., No.

6   2:12-cv-02958-MCE-CMK, 2013 WL 3339058 at *6 (E.D. Cal. July 2, 2013).

7   Accordingly, Defendants' Motion in regard to Plaintiffs' breach of contract claim is

8   denied.

9

10        **B.     Breach of Implied Covenant of Good Faith and Fair Dealing**

11

12        "Every contract imposes on each party an implied duty of good faith and fair

13   dealing." Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal.

14   App. 4th 335, 345 (2001).  "When an insurer unreasonably and in bad faith withholds

15   payment on a claim of its insured, it is subject to liability." McCoy v. Progressive West

16   Ins. Co., 171 Cal. App. 4th 785, 792 (2009).  The "linchpin of a bad faith claim is that the

17   denial of coverage was unreasonable." Id. at 793.  An "insurer is not entitled to

18   judgment as a matter of law where, viewing the facts in the light most favorable to the

19   plaintiff, a jury could conclude that the insurer acted unreasonably." Id. at 794.

20        Defendants contend that "[t]he existence of a 'genuine dispute' [here] precludes

21   [Plaintiffs] from establishing the required element of unreasonable conduct on the part of

22   [Defendants], and thus, defeats [Plaintiffs'] claim for bad faith."  (ECF No. 12-1 at 11.)

23   The "genuine issue rule in the context of bad faith claims allows a [trial] court to grant

24   summary judgment when it is undisputed or indisputable that the basis for the insurer's

25   denial of benefits was reasonable." McCoy, 171 Cal. App. 4th at 794.  However, in the

26   instant action, the parties dispute "that the basis for [Defendants'] denial of benefits was

27   reasonable." Id.  Specifically, the parties dispute whether it is reasonable to deny an

28   insured's claim based on a mislabeled notice of nonrenewal.

1    Viewing the facts in the light most favorable to Plaintiffs, the Court finds the issue

2  of whether or not Defendants acted reasonably in denying Plaintiffs' claim regarding the

3  June 26, 2012 burglary is a determination for a jury to make.  The Court cannot say as a

4  matter of law, as it must in order to grant summary judgment on this claim, that it was

5  unreasonable for Defendants to withhold payment on the basis of a Notice of

6  Nonrenewal that inaccurately described the policy as one providing homeowners

7  insurance rather than renter's insurance.  Accordingly, Defendants' Motion in regard to

8  Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is

9  denied.

10

11                                          **CONCLUSION**

12

13    For the reasons stated above, Defendants' Motion for Summary Judgment (ECF

14  No. 12) is DENIED.

15  Dated:  November 26, 2013

16

17

18                                    _____
                                     MORRISON C. ENGLAND, JR, CHIEF JUDGE
19                                   UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28
                                              8